UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLORIA BASARABA, On Behalf of Herself and All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 4:14-cv-1558 |
| Plaintiff, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| PETROLOGISTICS LP, PETROLOGISTICS GP LLC, PROPYLENE HOLDINGS LLC, JAIME BUEHL-REICHARD, ALAN E. GOLDBERG, LANCE L. HIRT, ZALMIE JACOBS, PHILLIP D. KRAMER, ROBERT D. LINDSAY, DAVID LUMPKINS, NATHAN L. TICATCH, JOHN B. WALKER, ANDREW S. WEINBERG, HALLIE A. VANDERHIDER, FLINT HILLS RESOURCES, LLC, and FHR PROPYLENE LLC, | § § § § § § § § § § § § § | |
| Defendants. | § § § | |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Gloria Basaraba ("Plaintiff"), on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action on behalf of herself and the other Public Unitholders[1] of PetroLogistics LP ("PetroLogistics" "MLP" or the "Partnership"), other than Defendants (defined below) and their affiliates, against PetroLogistics, PetroLogistics' general partner PetroLogistics GP LLC ("MLP GP" and together with MLP, the "MLP Entities"), certain officers and members of MLP GP's board of directors (the "Board" or the "Individual Defendants"), Propylene Holdings LLC ("GP Holdings"), Flint Hills Resources, LLC ("Flint Hills" or "Parent"), and FHR Propylene, LLC ("Merger Sub"), for breaching their covenant of good faith and/or fiduciary duties in connection with Flint Hill's proposed acquisition of all the outstanding common units of PetroLogistics (the "Proposed Transaction"), and/or aiding and abetting thereof.

2.     Headquartered in Houston, Texas, PetroLogistics is a major producer of propylene and is the only independent dedicated propylene producer in the United States. PetroLogistics owns and operates the world's largest propane dehydrogenation facility, based on production capacity, located in the vicinity of the Houston Ship Channel.  The Partnership's propane dehydrogenation plant can convert cheap U.S. shale gas into propylene, a key petrochemical used to make plastics.

---

[1] The "Public Unitholders" include all holders of MLP common units, other than: (i) YSOF Propylene Investor LLC, York Special Opportunities Fund AIV II, L.P., York Special Opportunities Fund (PIV-A), L.P., YSOF (PIV-B) SUB II, LLC, LG Propylene LLC, Lindsay Goldberg & Bessemer II AIV L.P., Lindsay Goldberg & Bessemer II-A AIV L.P., Lindsay Goldberg & Bessemer II-A NNAIV L.P., Lindsay Goldberg & Bessemer II PIV AIV L.P., Lindsay Goldberg & Bessemer II-BT AIV L.P., Lindsay Goldberg Co-Investment II AIV L.P., Lindsay Goldberg Employee Co-Investment II, L.P., and Dean Ventures X, L.L.C. (collectively, the "Sponsors"), and (ii) David Lumpkins, Nathan Ticatch, and a related family partnership and family trust (collectively, the "Founding Unitholders").

3.      On May 28, 2014, PetroLogistics and Flint Hills, a subsidiary of Koch Industries Inc., jointly announced that they had reached a definitive Agreement and Plan of Merger and Membership Interest Transfer Agreement (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into MLP (the "Merger"), with MLP surviving the Merger as a subsidiary of Flint Hills, and GP Holdings will transfer to Flint Hills (or one or more affiliates of Flint Hills) 100 percent of the issued and outstanding membership interests in MLP GP (the "GP Equity Transfer").  Flint Hills will pay $14.00 in cash for each PetroLogistics common unit to the Partnership's Public Unitholders (the "Public Merger Consideration"), who collectively own 27 percent of the Partnership.  A group of unitholders who control the remaining 73 percent of the Partnership, including Lindsay Goldberg LLC ("Lindsay Goldberg"), York Capital Management ("York Capital"), PetroLogistics' executive chairman, David Lumpkins, and its chief executive, Nathan Ticatch, will receive $12.00 per unit.  Accordingly, the Partnership's Public Unitholders will receive $526.2 million, while the Partnership's insider majority unitholders will receive $1.22 billion.  The Merger is valued at $2.1 billion including debt, and is expected to close before the end of 2014.

4.      The Proposed Transaction undervalues PetroLogistics' prospects and is the result of an entirely unfair sales process.  The $14.00 per unit Public Merger Consideration represents a measly 8.3 percent premium based on the Partnership's closing price the day prior to the date the Merger was announced.  In fact, the Public Merger Consideration provides the Partnership's Public Unitholders with only a one percent premium when compared to the Partnership's April 29, 2014 closing price of $13.85 per unit.  The offer price is also below PetroLogistics' 52-week trading high of $14.28 per unit.  Notably, the market itself is reflecting that PetroLogistics has been undervalued by the Board, as PetroLogistics' current unite price (as of June 4, 2014) is

trading *above* the $14.00 Public Merger Consideration.  As one financial reporter stated, "[t]he 8% premium is very small."[2]  Indeed, at least two financial analysts recently set a target for PetroLogistics at $17.00 per unit, and another analyst set a target price of $20.00 per unit within the past year.

5.     The premium PetroLogistics' Public Unitholders stand to collect is particularly inadequate given the significant benefits Flint Hills will reap if the Merger is consummated. PetroLogistics owns and operates the only propane dehydrogenation facility in the United States, which has a production capacity of 1.45 billion pounds.  The plant turns propane into propylene, a widely used building block material that goes into everything from paint and building materials to clothing and automotive parts.  Global propylene demand is expected to grow 61 percent by 2025,[3] which likely means that PetroLogistics' earnings will grow robustly over the next decade. Indeed, Flint Hills CEO Brad Razook recently commented on the strength of PetroLogistics' business and synergies between the two companies, stating "[PetroLogistics] is a world-class operation.  Its capabilities are well aligned with our existing chemical and refining business."[4]

6.     Compounding the failure to provide adequate consideration, the sales and negotiation process leading up to the consummation of the Merger Agreement was fundamentally flawed because of a significant conflict of interest that infiltrated the sales process.  In connection with the execution of the Merger Agreement, Flint Hills and Merger Sub

---

[2]  Travis Hoium, *Why Shares of PetroLogistics LP Popped Today*, THE MOTLEY FOOL, http://www.fool.com/investing/general/2014/05/28/why-shares-of-petrologistics-lp-popped-today.aspx.

[3]  William Lemos, *Global propylene demand to grow 61% by 2025 – US consultant*, http://www.icis.com/resources/news/2012/01/26/9527264/global-propylene-demand-to-grow-61-by-2025-us-consultant/.

[4]  *PetroLogistics LP Agrees To Be Acquired By Flint Hills Resources, LLC*, http://www.sec.gov/Archives/edgar/data/1523733/000114036114023323/ex99_1.htm.

entered into support agreements with Defendant David Lumpkins and Defendant Nathan L. Ticatch, and a related family partnership and family trust, and with private equity firms Lindsay Goldberg and York Capital, which collectively hold approximately 73 percent of PetroLogistics' outstanding common units. Pursuant to the agreements, these individuals and entities have agreed to vote their units in favor of the Merger, thereby locking up the Proposed Transaction to the detriment of PetroLogistics' Public Unitholders. No additional unitholder action is required to approve the Proposed Transaction.

7.     At least six of the Individual Defendants hold leadership positions at Lindsay Goldberg or York Capital. Thus, it appears that these directors dominated the sales and negotiation process and placed their own personal financial interests ahead of PetroLogistics' Public Unitholders. The Proposed Transaction will provide Lindsay Goldberg investors with an immediate infusion of over $836 million in cash, York Capital investors with more than $209 million in cash, Defendant Lumpkins with over $92 million in cash, and Defendant Ticatch with more than $81 million in cash. Furthermore, in connection with the Merger, Flint Hills has agreed to make certain payments to PetroLogistics' employees, including certain named executive officers. In sum, it appears that the Proposed Transaction was facilitated solely to provide Lindsay Goldberg, York Capital, Lumpkins, Ticatch and other insiders with a quick and easy exit on their investments in PetroLogistics. Indeed, the meager one to eight percent premium PetroLogistics' Public Unitholders stand to receive pales in comparison to the three-fold return the Sponsors stand to reap on their initial investment in the Partnership.

8.     In addition to failing to obtain fair and reasonable consideration for PetroLogistics' Public Unitholders, it appears that the Board chose to forgo establishing a special committee of truly independent directors to evaluate the Proposed Transaction, and also agreed

to unreasonable deal-protection devices that unfairly favor Flint Hills and discourage potential bidders from submitting a superior offer for the Partnership.  These preclusive devices include: (i) a non-solicitation provision that restricts the Board from soliciting other potentially superior offers after the expiration of an inadequate "window-shop" period; (ii) an "information rights" provision, which provides Flint Hills with unfettered access to information about other potential proposals, gives Flint Hills the opportunity to negotiate a new deal with PetroLogistics in the event a competing offer emerges, and provides Flint Hills with the perpetual right to attempt to beat any superior bid; and (iii) an unreasonably high termination fee of up to $57 million.

9.     Additionally, pursuant to the support agreements they entered into, Lindsay Goldberg and York Capital may be required to pay a fee of up to $50 million if an alternative acquisition proposal for the Partnership is consummated.  Thus, the Proposed Transaction appears all but locked up, as it is almost certain that Lindsay Goldberg and York Capital will do everything they can to avoid paying this fee.

10.    As alleged in further detail below, both the consideration PetroLogistics' Public Unitholders stand to receive via the Proposed Transaction and the process by which Defendants propose to consummate the Merger are fundamentally unfair to Plaintiff and the Partnership's other Public Unitholders.

11.    The Individual Defendants' conduct constitutes a breach of their obligation to act in good faith and/or the fiduciary duties owed to PetroLogistics' Public Unitholders, and a violation of applicable legal standards governing the Individual Defendants' conduct.

12.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Individual

Defendants' violations of their obligation to act in good faith and/or their fiduciary duties of loyalty, good faith and due care.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and Defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $2.1 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendant, including PetroLogistics, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in substantial part in this District.  Finally, Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

15.     Plaintiff is, and has been at all relevant times, a Public Unitholder of PetroLogistics.  Plaintiff is a citizen of Washington.

16.     Defendant PetroLogistics is a Delaware master limited partnership headquartered in Houston, Texas.  The Partnership's common units are traded on the New York Stock Exchange under the symbol "PDH".

17.     Defendant MLP GP is a Delaware limited liability company and the general partner of PetroLogistics.

18.     Defendant GP Holdings is a Delaware limited liability company that holds 100 percent of the issued and outstanding membership interests in MLP GP.

19.     Defendant Jaime Buehl-Reichard ("Buehl-Reichard") was appointed as a director of MLP GP in June 2012.  Buehl-Reichard is also a Managing Director at Lindsay Goldberg, which she joined in 2003.  Buehl-Reichard is a citizen of New York and/or New Jersey.

20.     Defendant Alan E. Goldberg ("Goldberg") was appointed as a director of MLP GP in June 2011.  Goldberg co-founded Lindsay Goldberg in 2001 and currently serves as a Co-Managing Partner.  Goldberg is a citizen of New York.

21.     Defendant Lance L. Hirt ("Hirt") was appointed as a director of MLP GP in June 2011.  He currently serves as chairman of the compensation committee of the board.  Hirt is also a Partner at Lindsay Goldberg, which he joined in 2003.  Hirt is a citizen of New York.

22.     Defendant Zalmie Jacobs ("Jacobs") was appointed as a director of MLP GP in June 2011.  Jacobs joined York Capital in March 2008 and is Co-Head of Private Equity at York Capital and a partner of the firm.  Jacobs is a citizen of New York.

23.     Defendant Phillip D. Kramer ("Kramer") was appointed as a director of MLP GP in July 2012 and was elected to serve as the chairman of the audit committee of the board.  Kramer is a citizen of Texas.

24.     Defendant Robert D. Lindsay ("Lindsay") was appointed as a director of MLP GP in June 2011.  Lindsay co-founded Lindsay Goldberg in 2001 and currently serves as a Co-Managing Partner.  Lindsay is a citizen of New York.

25.     Defendant David Lumpkins ("Lumpkins") is a director of MLP GP and has been affiliated with Lindsay Goldberg since 2000, during which time he has worked on a number of investment opportunities in the petrochemical and energy mid-stream industries.  Lumpkins is a citizen of Texas.

26.     Defendant Nathan L. Ticatch ("Ticatch") is a director of MLP GP and has been affiliated with Lindsay Goldberg since 2000, during which time he has worked on a number of investment opportunities in the petrochemical and energy mid-stream industries.  Ticatch is a citizen of Texas.

27.      Defendant John B. Walker ("Walker") was appointed as a director of MLP GP in May 2012.  Walker serves on the audit and compensation committees of the board.  Walker is a citizen of Texas.

28.     Defendant Andrew S. Weinberg ("Weinberg") was appointed as a director of MLP GP in June 2011 and is a member of the audit committee of the board.  Weinberg is also a Partner at Lindsay Goldberg, which he joined in 2003.  Weinberg is a citizen of New York.

29.     Defendant Hallie A. Vanderhider ("Vanderhider") was appointed as a director of MLP GP in April 2013 and is a member of the audit committee of the board.  Vanderhider is a citizen of Texas.

30.     The Individual Defendants identified in the preceding paragraphs, by virtue of their positions as directors and/or officers of MLP GP, are in a fiduciary relationship with Plaintiff and the other Public Unitholders of PetroLogistics.

31.     Each of the Individual Defendants at all relevant times had the power to control and direct PetroLogistics to engage in the misconduct alleged herein.   The Individual Defendants' obligations required them to act in the best interest of Plaintiff and the Partnership's Public Unitholders.

32.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are continuing to violate, the duties and obligations they owe to Plaintiff and the Partnership's other Public Unitholders, due to the fact

that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

33.     Flint Hills is a Delaware limited liability company headquartered in Wichita, Kansas, and is a subsidiary of Koch Industries, Inc.  Flint Hills is an independent refining, chemicals and biofuels company.  Flint Hills' petrochemicals are used to manufacture goods from plastics to building products to packaging materials.  Flint Hills' plastic operations include plants in Longview, Texas, and Marysville, Michigan, as well as an expandable polystyrene plant in Peru, Illinois.  The firm also makes plastic feedstocks ethylene and propylene at a plant in Port Arthur, Texas.

34.     Defendant Merger Sub is a Delaware limited liability company, wholly owned by Flint Hills, and was created for the purposes of effectuating the Proposed Transaction.

35.     Collectively, the Individual Defendants, PetroLogistics, MLP GP, GP Holdings, Flint Hills and Merger Sub are referred to herein as the "Defendants".

**THE INDIVIDUAL DEFENDANTS' OBLIGATIONS & FIDUCIARY DUTIES**

36.     By reason of the Individual Defendants' positions as officers and/or directors of PetroLogistics, MLP GP and/or GP Holdings, they are obligated to act in good faith and/or owe fiduciary duties to Plaintiff and the other Public Unitholders of PetroLogistics, including the duty of good faith, due care, and loyalty.  Among these fiduciary duties are (1) the duty of the Board to maximize the price by securing a fair premium for PetroLogistics' Public Unitholders and (2) the duty of the Board to avoid conflicts of interest or divided loyalties by preferring one unitholder or a group of unitholders' interests over another.

37.     Thus, where the officers and/or directors of a publicly traded entity undertake a transaction that will result in either: (i) a change in corporate control; (ii) a breakup of the entity's assets; or (iii) sale of the entity, the directors have an affirmative fiduciary obligation to

obtain the highest value reasonably available for the entity's unitholders, and if such transaction will result in a change of control, the unitholders are entitled to receive a significant premium. To diligently comply with their obligations and fiduciary duties, the directors and/or officers may not take any action that:

      a.     adversely affects the value provided to the entity's unitholders;

      b.     favors themselves or will discourage or inhibit alternative offers to purchase control of the entity or its assets;

      c.     contractually prohibits them from complying with their obligation to act in good faith and/or fiduciary duties;

      d.     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the entity's unitholders; and/or

      e.     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the Public Unitholders.

38.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of PetroLogistics, MLP GP and/or GP Holdings, are obligated to refrain from:

      a.     participating in any transaction where the directors or officers' loyalties are divided;

      b.     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the Public Unitholders of the entity; and/or

      c.     unjustly enriching themselves at the expense or to the detriment of the Public Unitholders.

39.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their obligation to act in good faith and/or fiduciary duties, including the duties of loyalty, good faith and care owed to Plaintiff and other Public Unitholders of PetroLogistics, or are aiding and abetting others in violating those duties.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of PetroLogistics' common units who are being and will be harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

41.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time and can be ascertained through appropriate discovery, as of May 1, 2014, approximately 139 million of the Partnership's common units were outstanding.  The holders of these units are believed to be geographically dispersed throughout the United States;

b.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia* the following:

i.    Whether the Individual Defendants have breached their obligations to act in good faith and/or fiduciary duties of loyalty, good faith or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

    ii.  Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Partnership or its assets;

    iii.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated; and

    iv.  Whether PetroLogistics, MLP GP, GP Holdings, Flint Hills and/or Merger Sub aided and abetted the Individual Defendants' breaches of their obligations to act in good faith and/or fiduciary duties;

   c.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

   d.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

   e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

   f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.**  **Background**

   42.  PetroLogistics, which is majority-owned by Lindsay Goldberg and York Capital, went public in May 2012, selling 35 million common units at $17.00 apiece.   After the Partnership's initial public offering, Lindsay Goldberg and York Capital owned 63 percent of the

Partnership's common units.  PetroLogistics currently owns and operates the only U.S. propane

dehydrogenation (or "PDH") facility producing propylene from propane.  Propylene is one of the

basic building blocks for petrochemicals and is utilized in the production of a variety of end uses

including paints, coatings, building materials, clothing, automotive parts, packaging and a range

of other consumer and industrial products.  The Partnership is the only independent, dedicated

"on-purpose" propylene producer in North America.  It is strategically located in the vicinity of

the Houston Ship Channel, which is situated within the largest propylene consumption region in

North America.  The Partnership also has access to the leading global fractionation and storage

hub for propane located at Mt. Belvieu, Texas.  The Partnership's location provides it with

excellent access and connectivity to both customers and feedstock suppliers.

43.    PetroLogistics' principle objective is to maximize its quarterly cash distributions

to its unitholders.  According to the Partnership, it aims to achieve this objective by executing the

following strategies:

- *Focus on Operational Excellence, Reliable Production, Safety, and Training.*  Operational excellence, reliability and safety are our core values.  One of the key factors driving our selection of the CATOFIN technology was its reliability.  We also assembled our key management team with an intentional focus on the complement of skills and experience necessary to deliver consistent and efficient operational results.

- *Continual Optimization of Our Facility.*  Our management team and engineering staff are continually working to further optimize and improve the operating performance of our facility.  One major focus is to identify cost-efficient methods to increase propylene output beyond current production levels.  We have initiatives underway to optimize propylene yield, energy efficiency and general plant operations.

- *Pursue Growth Opportunities*.  We intend to opportunistically pursue expansion and other growth opportunities.  In addition, we continue to evaluate and pursue acquisition and organic development opportunities complementary to our operating platform.

- *Actively Manage Customer Portfolio.*  We believe that our current propylene customer portfolio represents an attractive composition of

customers that serve diverse end-use markets and that are prominent industry members.  We also have well-established relationships with other consumers of propylene developed through active cultivation and regular interaction.  During 2013 we completed negotiations with Total, INEOS, BASF and LyondellBasell to extend the terms of their respective contracts with us.  We continue to build on our existing relationships with the expectation of continued renewals when contracts expire.  We also cultivate additional potential customers to add to our portfolio if existing contracts roll off or our facility's capacity is expanded.

- *Distribute All of the Available Cash We Generate Each Quarter.*  The board of directors of our General Partner has adopted a policy under which we will distribute all of the available cash we generate each quarter…

## B.    PetroLogistics' Strong Performance

44.    As evidenced by the chart below, PetroLogistics' success has been demonstrated by its ability to pay a consistent dividend, which is the Partnership's primary objective:

| Quarter | Distributions Declared Per Unit |
|---|---|
| First Quarter 2014 | $ 0.37 |
| **Year ended December 31, 2013** | |
| Fourth Quarter | $ 0.30 |
| Third Quarter | $ 0.45 |
| Second Quarter | $ 0.30 |
| First Quarter | $ 0.67 |
| **Year ended December 31, 2012** | |
| Fourth Quarter | $ 0.28 |
| Third Quarter | $ 0.21 |
| Second Quarter | $ 0.26 ($ 0.45 on a full-quarter basis) |

45.     The Partnership's success is also reflected by its strong financial results.  For the first quarter 2014, the Partnership announced that total sales were $220.0 million and net income was $46.7 million.  The Partnership produced 315.5 million pounds of propylene during the first quarter of 2014, compared to 298.9 million pounds produced during the same period of 2013.  The Partnership recognized total sales of $220.0 million and $208.7 million, during the quarters ended March 31, 2014 and 2013, respectively, an increase of $11.3 million.  This increase was primarily driven by higher propylene sales which totaled $214.4 million for the quarter ended March 31, 2014, compared to $204.3 million in 2013.

46.     Commenting on the strong results, Defendant Ticatch stated:

The partnership turned in solid earnings for the quarter, generating a distribution of 37 cents per unit.  This result was achieved despite a very cold winter and a resulting spike in propane prices in January and February…  Our performance was positively impacted by the significant improvement in plant operations we have experienced since coming out of our planned turnaround in October 2013.  During January and February of this year, we set an average daily production record of 3.94 million pounds of propylene per day.  We also successfully completed a previously announced outage which commenced in late March to replace two heat exchangers and made other modifications to continue to improve plant reliability and increase production.

47.     Additionally, on May 8, 2014, PetroLogistics entered into a Propane Purchase and Sales Agreement ("Propane Agreement") pursuant to which it agreed to purchase 100 percent of the propane that it needs for the operation of its business from a specific seller for a 20-year period commencing in 2015.  The Propane Agreement is likely to generate significant savings for the Partnership, as it will likely reduce its production costs.  Accordingly, the Proposed Transaction stands to prevent PetroLogistics' Public Unitholders from attaining the full value of the Partnership's recent entry into the Propane Agreement.

48.     The Partnership also recently completed its first "triennial turnaround," which is a planned shutdown of operations for three to four weeks every third year in order to update and

improve the plant.   Having successfully completed the "turnaround," the Partnership now

expects its production capabilities, and therefore its profits, to improve going forward.   As

Defendant Lumpkins stated:

> The Partnership successfully completed its first planned triennial turnaround
> during the fourth quarter…   The turnaround went extremely well and our reserves
> were adequate to fund the entire cost of the turnaround as well as maintain
> distributions during the downtime.   In addition, since restart we have seen
> improved plant performance and look forward to continued improvements in
> reliability.

49.   In sum, the Partnership is well-positioned to continue its growth trend, as its

business has continually developed and earned a profit since being taken public.   Despite the

Partnership's strong financial prospects, the Board has now agreed to sell PetroLogistics at a

price below its intrinsic value, to the detriment of the Partnership's Public Unitholders.

## C.   The Proposed Transaction Undervalues PetroLogistics' Common Units

50.   On May 28, 2014, PetroLogistics and Flint Hills issued a joint press release

announcing the Proposed Transaction, which stated in relevant part:

> HOUSTON and WICHITA, Kan., May 28, 2014 /PRNewswire/ -- PetroLogistics
> LP (NYSE: PDH) announced today that it and its general partner, PetroLogistics
> GP LLC, have entered into a definitive agreement to be acquired by Flint Hills
> Resources, LLC, a subsidiary of Koch Industries, Inc.   Under the terms of the
> acquisition agreement ("Merger Agreement"), Flint Hills Resources will acquire
> all of PetroLogistics' outstanding common units for $14.00 per common unit in
> cash, except for those common units owned by Lindsay Goldberg LLC ("Lindsay
> Goldberg"), York Capital Management ("York Capital"), PetroLogistics'
> Executive Chairman and its President and Chief Executive Officer, which will be
> acquired for $12.00 per common unit in cash.
>
> In addition, PetroLogistics expects to continue to make distributions consistent
> with its historical distribution policy through the closing date of the transaction.
> If the closing date occurs before the announced record date for any quarterly
> distribution, the record date for such quarterly distribution will be the business
> day immediately before the transaction's closing date.   PetroLogistics will also
> make a final, one-time, cash distribution in connection with, and conditioned
> upon, the closing of the transaction, which is calculated to approximate the
> distribution that would have been earned through the closing date, subject to an
> additional reserve of approximately $12.3 million to cover transaction related

costs.   The record date for the final, one-time, cash distribution will be the business day immediately before the closing date of the transaction.  Flint Hills Resources will also acquire all of the membership interests in PetroLogistics GP for no additional consideration.

The all-cash transaction is valued at approximately $2.1 billion, including the assumption of debt.  Based on the closing unit price on May 27, 2014, the $14.00 per unit purchase price represents a premium in excess of 8% to the publicly-traded units.  The closing of the transaction is expected to occur before year end and is subject to customary closing conditions and regulatory approvals.  Additionally, the consummation of the transaction is subject to a requirement that PetroLogistics' facility perform at a certain level of production for a period of four days before the closing, and to PetroLogistics' receipt of a legal opinion regarding certain tax matters.

The Merger Agreement has been approved by the boards of directors of both PetroLogistics GP and Flint Hills Resources.  Lindsay Goldberg, York Capital, PetroLogistics' Executive Chairman and its President and Chief Executive Officer, owning common units representing, in the aggregate, approximately 73% of the outstanding common units, have delivered a written consent approving the transaction and have entered into support agreements with Flint Hills Resources pursuant to which they have agreed to support the transaction until it is consummated or until the Merger Agreement is terminated.   No additional unitholder action is required to approve the transaction.

Under the Merger Agreement, until 11:59 p.m. (Central Time) on July 6, 2014, PetroLogistics may, subject to certain conditions, provide certain information to and enter into discussions and negotiations with any third party that submits an unsolicited qualifying superior acquisition proposal.   In response to such a proposal, under certain circumstances, the board of directors of PetroLogistics GP may, after providing Flint Hills Resources the opportunity to match the proposal, terminate the Merger Agreement with Flint Hills Resources and enter into or recommend a transaction with the third party that submitted the proposal.  In that event, Flint Hills Resources would receive a $57 million termination fee from PetroLogistics.  In addition, in that event Flint Hills Resources may be entitled to receive from Lindsay Goldberg and York Capital 50% of any incremental value received by them upon consummation of such a transaction, up to a total cap of $50 million.

"PetroLogistics built this facility from the ground up.   It is a world-class operation," said Brad Razook, Flint Hills Resources President and Chief Executive Officer.  "Its capabilities are well aligned with our existing chemical and refining business.  We look forward to welcoming PetroLogistics employees to Flint Hills Resources as we work together to build on their success."

Goldman Sachs & Co. is acting as financial advisor and Jones Day is acting as legal advisor to Flint Hills Resources. Morgan Stanley & Co. LLC and Evercore

Partners are acting as financial advisors to PetroLogistics and have delivered fairness opinions, and Weil, Gotshal & Manges LLP and Vinson & Elkins LLP are acting as legal advisors to PetroLogistics.

51.     In connection with the Proposed Transaction, GP Holdings will transfer to Flint Hills (or one or more affiliates of Flint Hills) 100 percent of the issued and outstanding membership interests in MLP GP for no additional consideration.

52.     Additionally, Lindsay Goldberg, York Capital, Defendant Lumpkins and Defendant Ticatch, who collectively own approximately 73 percent of PetroLogistics' common units, have delivered written consent approving the transaction and have entered into support agreements with Flint Hills pursuant to which they have agreed to support the Proposed Transaction.

53.     The $14.00 per unit Public Merger Consideration is grossly insufficient, as it fails to account for PetroLogistics' significant future earning potential and provides the Partnership's Public Unitholders with virtually no premium at all.

54.     Indeed, as demonstrated by the chart below, the Partnership's stock price has risen more than 23 percent in the past six months alone, which is significantly higher than the premium provided for by the Public Merger Consideration:



55.     The meager 8.3 percent premium offered to PetroLogistics' Public Unitholders also fails to account for the fact that this is, in effect, a "minority squeeze-out" by Defendants of the non-insider unitholders as a result of the controlling voting interest of Lindsay Goldberg and York Capital, which will allow them to reject any alternative transactions.  In such situations, the normal course of business is for the Board to demand a "minority squeeze our premium." Minority squeeze-out premiums are often significant and run into the 30 percent range.

56.     The Proposed Transaction likewise fails to offer fair compensation for forcing the Public Unitholders, through a locked-up transaction, to accept a fundamental change in the nature of their investment in the Partnership, i.e., being cashed out of their investment in a high cash distribution entity at an unfair price.

57.     In sum, PetroLogistics is poised to enjoy a lengthy period of significant growth, and the Proposed Transaction stands to prevent the Partnership's Public Unitholders from attaining fair value for their shares.

**D.      The Unreasonable Deal Protection Devices**

58.     The Proposed Transaction is also unfair because, as part of the Merger Agreement, Defendants agreed to certain deal protection devices that operate conjunctively to ensure that no competing offers will emerge for the Partnership.

59.     First, the Merger Agreement provides for an onerous non-solicitation provision which, after the expiration of an inadequate "window-shop" period, prohibits the MLP Entities or the Individual Defendants from taking any affirmative action to comply with their good faith obligation and fiduciary duties to obtain the best price possible under the circumstances. Specifically, section 6.4(a) of the Merger Agreement states that the MLP Entities and the Individual Defendants shall not directly or indirectly:

A) initiate, solicit or knowingly facilitate or encourage any inquiries, discussions regarding, or the making or submission of, any proposal, request or offer that constitutes, or could reasonably be expected to lead to, any Alternative Proposal;

(B) approve, endorse, recommend or enter into any Contract or agreement in principle, whether written or oral, with any Person (other than Parent and Merger Sub) concerning any letter of intent, memorandum of understanding, acquisition agreement, merger agreement, joint venture agreement, partnership agreement or other similar Contract concerning an Alternative Proposal (other than negotiating and entering into a confidentiality and standstill agreement as described in Section 6.4(a)(iii)) (an "Alternative Acquisition Agreement");

C) terminate, amend, release, modify, or fail to enforce any provision of, or grant any permission, waiver or request under, any standstill, confidentiality or similar Contract entered into by one or more of the MLP Group Entities in respect of or in contemplation of an Alternative Proposal (other than to the extent the MLP GP Board determines in good faith, after consultation with its outside financial and legal advisors, that failure to take any such actions under this Section 6.4(a)(i)(C) would not be in the best interests of the Unitholders);

(D) conduct, engage in, continue or otherwise participate in any discussions or negotiations regarding any Alternative Proposal;

(E) furnish any non-public information relating to any of the MLP Group Entities, or afford access to the books or records or Representatives of any of the MLP Group Entities, to any third party that, to the Knowledge of the MLP Entities, after consultation with its Representatives, is seeking to or may make, or has made, an Alternative Proposal;

(F) take any action to make the provisions of any Takeover Laws inapplicable to any transactions contemplated by any Alternative Proposal; or

(G) resolve or publicly propose or announce to do any of the foregoing.

60.     Furthermore, Section 6.4(d) of the Merger Agreement grants Flint Hills recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which Flint Hills can use to prepare a matching bid; and (ii) four business days to negotiate with the MLP Entities, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

61.     This matching rights provision essentially ensures that a superior bidder will not emerge, as any potential suitor will likely be deterred from expending the time, cost and effort of making a superior proposal while knowing that Flint Hills can easily foreclose a competing bid. As a result, the matching rights provision unreasonably favors Flint Hills, to the detriment of PetroLogistics' Public Unitholders.

62.     Additionally, section 8.2(b) of the Merger Agreement requires PetroLogistics to pay Flint Hills $57 million in the event that the Partnership terminates the Merger Agreement to pursue a superior proposal.  This unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would have to pay a naked premium for the right to provide PetroLogistics' Public Unitholders with a superior offer.

63.     Furthermore, in order to consummate the Proposed Transaction, Lindsay Goldberg, York Capital, Defendant Lumpkins, Defendant Ticatch and their respective associated entities entered into support agreements with Flint Hills and Merger Sub pursuant to which they have agreed to vote their common units in favor of the Merger and to refrain from soliciting bids or engaging in discussions with other potential suitors.

64.     Lindsay Golberg and York Capital have also agreed to pay a termination fee of up to $50 million if an alternative acquisition proposal is consummated.  This unreasonable additional termination fee essentially locks up the Proposed Transaction, as both entities will likely be deterred from supporting a superior bid given that doing so would cost them a significant amount of money.

65.     Ultimately, these deal protection provisions restrain the MLP Entities' ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a

significant interest in the Partnership, and stand to prevent PetroLogistics' Public Unitholders from receiving fair value for their common units.

66.     By failing to engage in a reasonable and fair sales process, the Individual Defendants have breached their obligation to act in good faith and/or fiduciary duties owed to PetroLogistics' Public Unitholders.  The Board failed to adequately test the market before entering into the Proposed Transaction, failed to obtain reasonable consideration for PetroLogistics' Public Unitholders, agreed to onerous deal protection devices that will undoubtedly prevent the emergence of a superior offer, and put their personal interests ahead of PetroLogistics' Public Unitholders while negotiating the terms of the Proposed Transaction.

67.     Defendants have thus prevented Plaintiff and the Class from being adequately compensated for their PetroLogistics common units.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Partnership's Public Unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of the Covenant of Good Faith and/or Fiduciary Duties**

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     The Individual Defendants have violated the covenant of good faith and/or the fiduciary duties of care, loyalty and good faith owed to PetroLogistics' Public Unitholders.

70.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in PetroLogistics.

71.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their covenant of good faith and/or duties of loyalty, good faith and due care owed to PetroLogistics' Public Unitholders because, among other reasons, they failed to take steps to maximize value for PetroLogistics' Public Unitholders, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of PetroLogistics' Public Unitholders.

72.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations and/or obligation to act in good faith toward Plaintiff and the other members of the Class.

73.     As a result of the actions of Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive a fair price for their common units.

74.     Unless the Court enjoins Individual Defendants, they will continue to breach their obligations and fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

75.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against MLP, MLP GP, GP Holdings, Flint Hills
and Merger Sub for Aiding and Abetting the
Individual Defendants' Breach of the Covenant of Good Faith and/or Fiduciary Duties**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     MLP, MLP GP, GP Holdings, Flint Hills and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their obligation to act in good faith and/or fiduciary duties to PetroLogistics' Public Unitholders, and have participated in such breaches.

78.     MLP, MLP GP, GP Holdings, Flint Hills and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, MLP, MLP GP, GP Holdings, Flint Hills and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their obligations and/or fiduciary duties.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.     Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Partnership adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for the Partnership's Public Unitholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Ordering Defendants to amend the Merger Agreement to include a provision that any vote be conditioned on a majority of PetroLogistic's Public Unitholders voting in favor of the Proposed Transaction;

E.      Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

G.      Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 4, 2014.                              Respectfully submitted,


                                                           _____*/s/ Thomas E. Bilek*_____
                                                           Thomas E. Bilek
                                                           TX Bar No. 02313525 / SDTX Bar No. 9338
                                                           **THE BILEK LAW FIRM, L.L.P.**
                                                           700 Louisiana, Suite 3950
                                                           Houston, TX  77002
                                                           (713) 227-7720
                                                           FAX (713) 227-9404

                                                           **ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

Juan E. Monteverde
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331